UNITED STATES, Appellee

v.

Stephen A. Prather, Airman
U.S. Air Force, Appellant

No. 10-0345

Crim. App. No. 37329

United States Court of Appeals for the Armed Forces

Argued September 28, 2010

Decided February 8, 2011

ERDMANN, J., delivered the opinion of the court, in which
EFFRON, C.J., and RYAN, J., joined.  BAKER, J., filed a separate
opinion dissenting as to part A and concurring in the result, in
which STUCKY, J., joined.

Counsel


For Appellant:  Major David P. Bennett (argued); Colonel Eric N.
Eklund, Lieutenant Colonel Gail E. Crawford, Major Michael A.
Burnat, Major Shannon A. Bennett, and Dwight H. Sullivan, Esq.
(on brief).

For Appellee:  Captain Naomi N. Porterfield (argued); Captain
Charles G. Warren and Gerald R. Bruce, Esq. (on brief); Colonel
Don M. Christensen.

Military Judge:  Thomas Dukes


**This opinion is subject to revision before final publication**.

United States v. Prather, No. 10-0345/AF

Judge ERDMANN delivered the opinion of the court.

Airman Stephen A. Prather pleaded not guilty to charges of aggravated sexual assault and adultery in violation of Article 120(c)(2) and Article 134, Uniform Code of Military Justice (UCMJ). He was convicted of both charges by a general court-martial composed of members and was sentenced to a reduction to E-1, forfeiture of all pay and allowances, confinement for two years and six months, and a dishonorable discharge. The convening authority approved the sentence and the United States Air Force Court of Criminal Appeals affirmed the findings and sentence. United States v. Prather, No. ACM 37329, 2010 CCA LEXIS 149, 2010 WL 4068932 (A.F. Ct. Crim. App. Jan. 25, 2010).

> Strictly speaking, the burden of proof, as those words are understood in criminal law, is never upon the accused to establish his innocence or to disprove the facts necessary to establish the crime for which he is indicted. It is on the prosecution from the beginning to the end of trial and applies to every element necessary to constitute the crime.

Davis v. United States, 160 U.S. 469, 487 (1895). We granted review to address the burden shifts found in Article 120(t)(16), UCMJ, when an accused raises the affirmative defense of consent to a charge of aggravated sexual assault by engaging in sexual

2

intercourse with a person who was substantially incapacitated.[1]
We conclude that the statutory interplay between the relevant
provisions of Article 120, UCMJ, under these circumstances,
results in an unconstitutional burden shift to the accused.  In
addition, we conclude that the second burden shift in Article
120(t)(16), UCMJ, which purports to shift the burden to the
government once an accused proves an affirmative defense by a
preponderance of the evidence, constitutes a legal
impossibility.

<u>BACKGROUND</u>

On October 30, 2007, Prather invited SH to a party that he
and his wife were hosting at their house on Travis Air Force
Base, California.  Prior to arriving at the party, SH asked
Prather if she could spend the night on his couch because she
planned on becoming intoxicated.  Prather agreed.  During the
party, Prather, SH, and others played drinking games.  At some

---

[1] We granted review of the following issue:

> Whether the elimination of the element of lack of
> consent combined with the shifting of the burden to
> prove consent, by a preponderance of the evidence, to
> the accused in order to raise an affirmative defense
> to aggravated sexual assault under Article 120, UCMJ,
> where Appellant allegedly engaged in sexual
> intercourse with a person who was substantially
> incapacitated, is a violation of Appellant's right to
> due process under the 5th Amendment of the U.S.
> Constitution.

United States v. Prather, 69 M.J. 168 (C.A.A.F. 2010) (order
granting review).

point during the party, SH made her way to the couch. There was conflicting testimony about exactly how she got to the couch and how intoxicated she was during this time period. The other guests departed in the early morning hours and Prather and his wife retired to their upstairs bedroom.

Prather testified that at 2:30 a.m. he went downstairs to get a glass of water and found SH awake. He testified that SH talked to him, kissed him, and took off her pants and underwear. According to Prather, they then engaged in consensual intercourse. SH testified that after passing out on the couch she awoke to find Prather on top of her already penetrating her. She testified that she passed out again and when she awoke to prepare for work, she found semen inside her and on her underwear.

After the presentation of evidence, the military judge engaged counsel in a lengthy discussion concerning the instructions he intended to give the members for the aggravated sexual assault charge. The military judge noted that the offense occurred within a month of the effective date of the new Article 120, UCMJ, so the charges had been filed under the new statutory structure for which there was little guidance. The military judge explained that he intended to provide instructions that tracked the language of the new Article 120, UCMJ.

In response, the defense counsel noted that the new Article 120, UCMJ, purported to remove "consent" as an element of the offense and required an accused to raise "consent" as an affirmative defense and prove it by a preponderance of the evidence. The defense counsel argued that since the Government was required to prove that the victim was substantially incapacitated, consent was still an element of the statute as a victim who is "substantially incapacitated" cannot give consent. The defense counsel argued that by requiring Prather to prove consent by a preponderance of the evidence, the burden shifted to him to negate or disprove the element of substantially incapacitated.

The defense counsel requested that the military judge follow the advice of the Military Judges' Benchbook, which suggested treating "consent" as a traditional affirmative defense under these circumstances.[2] The military judge acknowledged the defense concerns, but nonetheless rejected the

---

[2] Dep't of the Army Pamphlet 27-9, Legal Services, Military Judges' Benchbook, ch. 3, Instruction 3-45-5, NOTE 9 (2010) (instruction on aggravated sexual assault, Article 120, UCMJ), states:

> Because this burden shifting appears illogical, it raises issues ascertaining Congressional intent. The Army Trial Judiciary is taking the approach that consent is treated like many existing affirmative defenses; if raised by some evidence, the military judge must advise the members that the prosecution has the burden of proving beyond a reasonable doubt that consent did not exist.

United States v. Prather, No. 10-0345/AF

request.  The military judge's relevant instructions generally tracked the statutory scheme, including the shifting burdens consistent with Article 120(t)(16), UCMJ, with respect to the affirmative defenses.[3]  Prather appealed to the Air Force Court of Criminal Appeals, challenging the constitutionality of Article 120, UCMJ.  The lower court found no violation of Prather's due process rights.

DISCUSSION

Before this court, Prather again raises constitutional challenges to the statutory scheme involving the affirmative defense of consent in the context of Article 120(c)(2), UCMJ. The constitutionality of a statute is a question of law we review de novo.  United States v. Disney, 62 M.J. 46, 48 (C.A.A.F. 2005).

The pertinent statutory text of Article 120(c)(2), UCMJ, provides:

> (c)  Aggravated sexual assault.  Any person subject to this chapter who --
>
> . . . .
>
> (2)  engages in a sexual act with another person of any age if that other person is substantially incapacitated or substantially incapable of --
>
> (A)  appraising the nature of the sexual act;

---

[3] Attached as an appendix is the military judge's instructions to the members on these issues.

6

> > (B) declining participation in the sexual
> act; or
>
> > (C) communicating unwillingness to engage
> in the sexual act; is guilty of aggravated sexual
> assault and shall be punished as a court martial may
> direct.[4]

Article 120(r), UCMJ, provides in pertinent part:

> Consent and mistake of fact as to consent are not an
> issue, or an affirmative defense, in a prosecution
> under any other subsection, except they are an
> affirmative defense for the sexual conduct in issue in
> a prosecution under . . . subsection (c) (aggravated
> sexual assault) . . . .

Article 120(t)(14), UCMJ, provides in pertinent part:

> The term "consent" means words or overt acts
> indicating a freely given agreement to the sexual
> conduct at issue by a competent person. . . . A person
> cannot consent to sexual activity if --
>
> > . . . .
>
> > (B) substantially incapable of --
>
> > > (i) appraising the nature of the sexual
> > conduct at issue due to --
>
> > > > (I) mental impairment or
> > unconsciousness resulting from consumption of
> > alcohol, drugs, a similar substance, or otherwise
> > . . . .

Article 120(t)(16), UCMJ, provides:

> Affirmative defense. The term "affirmative defense"
> means any special defense that, although not denying
> that the accused committed the objective acts
> constituting the offense charged, denies, wholly, or

---

[4] Prather was charged as follows in the specification of Charge
I: "In that AIRMAN STEPHEN A. PRATHER . . . did, at or near
Travis Air Force Base, California, on or about 30 October 2007,
engage in a sexual act, to wit: sexual intercourse, with [SH],
who was substantially incapacitated."

7

> partially, criminal responsibility for those acts.
> The accused has the burden of proving the affirmative
> defense by a preponderance of evidence.  After the
> defense meets this burden, the prosecution shall have
> the burden of proving beyond a reasonable doubt that
> the affirmative defense did not exist.

A.  An accused's burden to prove the affirmative defense of
consent by a preponderance of the evidence under Article
120(c)(2), Article 120(r), Article 120(t)(14), and Article
120(t)(16)

Prather argues that "[b]y placing the burden on the accused

to prove consent when raising an affirmative defense, [Congress]

shifted the burden to the accused to disprove what is an implied

element or a fact that is essential to the offense of aggravated

sexual assault."  In Prather's view, "substantial incapacity,"

and "consent" are "two sides of the same coin" because the

statutory definition provides that "[a] person cannot consent to

sexual activity if . . . substantially incapable of . . .

appraising the nature of the sexual conduct at issue due to . .

. mental impairment or unconsciousness resulting from

consumption of alcohol . . . ."  Article 120(t)(14)(B)(i)(I),

UCMJ.  Thus, according to Prather, an accused cannot prove the

affirmative defense by a preponderance of the evidence without

also disproving an essential element of the offense of

aggravated sexual assault.  Prather also argues that the

military judge failed to instruct the panel that they "must"

consider evidence of consent in considering whether the

Government proved each element of the offense beyond a reasonable doubt.

The Government responds that the constitutionality of Article 120(c)(2), UCMJ, is consistent with the rationale of United States v. Neal, 68 M.J. 289 (C.A.A.F 2010), arguing that Neal makes it clear that "consent is not an element, implied or explicit of Article 120(c), UCMJ."[5]  Neal, however, is distinguishable from this case as it addressed "consent" in the context of Article 120(e), UCMJ (aggravated sexual contact) and did not involve a situation where the victim's capacity to give consent was at issue.[6]

It is well established that the Due Process Clause "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged."  In re Winship, 397 U.S. 358, 364 (1970).  However, it is less settled as to exactly when

_____

[5] Neal treated consent as an affirmative defense independent of the element of force and noted that facts pertinent to consent might also be pertinent to the element of force, and therefore it was necessary for the military judge to make clear in instructions that such facts could be considered for both purposes.  68 M.J. at 299.

[6] Neal identified three components of the statutory definition of consent under Article 120, UCMJ:  the first component defines consent; the second identifies circumstances excluded from the definition; and the third identified circumstances in which an individual cannot give consent.  68 M.J. at 297-98.  It is the third component, while not at issue in Neal, that is central to this case.  While Neal is not dispositive of the issues presented in this case, the general case law discussions in

a statute impermissibly relieves the prosecution of this burden by shifting to the defense a burden to prove a defense that overlaps in proof with an element of the charged offense. Over the years, the Supreme Court has wrestled with this issue. Leland v. Oregon, 343 U.S. 790, 793 (1952) (placing the burden on an accused to prove an affirmative defense is not, in and of itself, unconstitutional); see also Dixon v. United States, 548 U.S. 1, 7-8 (2006); Mullaney v. Wilbur, 421 U.S. 684, 702 (1975) (concluding that the state murder statute at issue required the defendant "to carry the burden of proving a fact [malice aforethought] so critical to criminal culpability" as to create an unconstitutional burden shift to the defendant); Patterson v. New York, 432 U.S. 197, 207 (1977) (finding no unconstitutional shifting of the burden to the defendant, the Supreme Court concluded that the statutory affirmative defense at issue "does not serve to negative any facts of the crime which the State is to prove in order to convict of murder"); Martin v. Ohio, 480 U.S. 228, 233-34 (1987) (although noting that a statute may not "shift to the defendant the burden of disproving any element of the [prosecution's] case," and concluding that the "evidence offered to support the defense may negate a purposeful killing by prior calculation and design," the Supreme Court nonetheless held that there had been no shifting of the burden because the

Section III, Part B, of Neal are instructive to the analysis of

10

instructions were "adequate to convey to the jury that all of the evidence, including the evidence going to self-defense, must be considered in deciding whether there was a reasonable doubt about the sufficiency of the State's proof of the elements of the crime").

With these principles in mind we examine the statutory framework presented in this case:  Prather was charged under Article 120(c)(2), UCMJ, with aggravated sexual assault by engaging in sexual intercourse with a person who was substantially incapacitated.  The essential elements of this offense are (1) that the accused engaged in a sexual act with another person; and (2) that person was substantially incapacitated.  Article 120(r), UCMJ, provides that "consent" is not an element of this offense, but it is an affirmative defense that may be raised by the accused.  Article 120(t)(16), UCMJ, provides that if an accused raises an affirmative defense, he must prove it by a preponderance of the evidence.[7]  Article 120(t)(14), UCMJ, defines "consent" and provides that a person who is substantially incapable of appraising the nature of the sexual conduct due to impairment or unconsciousness resulting from consumption of alcohol cannot consent.

---

the issues presented here.  Id. at 298-300.

[7] Article 120(t)(16), UCMJ, goes on to provide that if an accused proves the affirmative defense, the burden shifts to the government to disprove the affirmative defense beyond a

The Government argues that "proof that the victim was substantially incapacitated at the time of the sexual act does not preclude an affirmative defense of consent."  This argument is based, at least in part, upon the Government's assertion that consent given before a victim became substantially incapable continues to be valid throughout the period of incapacity.  That assertion, however, runs counter to the definition of consent in Article 120(t)(14), UCMJ.  Consent requires a freely given agreement by a competent person.  The Government provides no legal support for the proposition that such advance consent is not vitiated by the victim's subsequent incapacity -- a condition that at a minimum precludes the victim's ability to withdraw prior consent.

Under the facts of this case, Prather could not prove consent without first proving a capacity to consent on the part of the victim as Article 120(t)(14), UCMJ, provides that "[a] person cannot consent to sexual activity if . . . substantially incapable . . . ." (Emphasis supplied.)  Although there may exist an abstract distinction between "substantially incapacitated" and "substantially incapable," in the context presented here we see no meaningful constitutional distinction in analyzing the burden shift.  If an accused proves that the victim consented, he has necessarily proven that the victim had

---

reasonable doubt.  This second burden shift is addressed in

12

the capacity to consent, which logically results in the accused having disproven an element of the offense of aggravated sexual assault -- that the victim was substantially incapacitated. In an area of law with many nuances, one principle remains constant -- an affirmative defense may not shift the burden of disproving any element of the offense to the defense. See Martin, 480 U.S. at 233; Patterson, 432 U.S. at 207. Thus, the interplay of sections Article 120(c)(2), UCMJ, Article 120(t)(14),UCMJ, and Article 120(t)(16), UCMJ, results in an unconstitutional burden shift to the accused.

This, however, does not end our inquiry as the Government goes on to argue that the instructions provided by the military judge cured any constitutional infirmity in the statutory scheme, citing Martin. The military judge provided a series of instructions to the members on the burden of proof. During the preliminary instructions prior to voir dire, the military judge advised the members that "The Government has the burden of proving the accused's guilt by legal and competent evidence beyond a reasonable doubt." During final instructions on the merits, the military judge advised the members as follows on their use of any evidence of consent:

> If the Defense did not prove by a preponderance of the evidence that [SH] consented to the sexual act alleged, then the government bears no burden to disprove the affirmative defense of consent, and

---

Section B of this opinion.

13

> consent as an affirmative defense is not an issue for
> your further consideration. You may, however, still
> consider any evidence presented on the issue of
> consent if you find such evidence is relevant for your
> consideration of whether the prosecution has proven
> the elements of the offense beyond a reasonable doubt.

Shortly after this instruction, the military judge reminded the members that "the burden of proof to establish the guilt of the accused beyond a reasonable doubt is on the government. The burden never shifts to the accused to establish innocence or to disprove the facts necessary to establish each element of each offense." Finally, shortly before the trial counsel's closing argument, the military judge stated, "As the government has the burden of proof, trial counsel may open and close."

The Government argues that these instructions sufficiently informed the panel that the Government had the burden of proving the elements of the offense beyond a reasonable doubt and also that its findings should be based on all the evidence, regardless of their determination as to whether the defense proved the affirmative defense by a preponderance of the evidence. There are two related but distinct instructional issues raised here: whether the standard "ultimate burden" instructions given by the military judge cured the unconstitutional burden shift that required Prather to disprove the element of substantial incapacity; and if so, whether the instruction on the evidence of the affirmative defense informed the panel that they must consider that evidence in their

14

deliberations as to whether the Government proved the element of substantial incapacity beyond a reasonable doubt.

We agree with the Government that we must evaluate the instructions "in the context of the overall message conveyed to the jury." Humanik v. Beyer, 871 F.2d 432, 441 (3d Cir. 1989). As noted, the military judge instructed the panel on the burden shift scheme consistent with the text of Article 120.[8] In regard to the standard burden instructions given by the military judge, it is our view that where the statutory scheme has shifted the burden to the accused to negate or disprove an element of the offense and the panel is so instructed, standard "ultimate burden" instructions are insufficient to resolve the constitutional issue.[9] As the Third Circuit noted in Humanik:

---

[8] The statutory scheme at issue in this case places military judges in an impossible position. "[T]he military judge must bear the primary responsibility for assuring that the jury properly is instructed on the elements of the offenses raised by the evidence as well as potential defenses and other questions of law." United States v. Graves, 1 M.J. 50, 53 (C.M.A. 1975). Here the military judge not unreasonably followed the statutory scheme in crafting his instructions on the affirmative defense. However, in order to provide an instruction that accurately informed the panel of the Government's burden (as recommended by the Military Judges' Benchbook), the military judge would have to ignore the plain language of Article 120, UCMJ.

[9] While Judge Baker's separate opinion criticizes the majority opinion for not indicating what instruction would have cured this constitutional deficiency, we do not believe that any instruction could have cured the error where the members already had been instructed in a manner consistent with the text of Article 120. No plausible instruction has been identified by the Government that would resolve the constitutional and textual difficulties of having to prove an affirmative defense that incorporates the core requirements of an element of the offense.

> In this kind of situation, the constitutional problem is not eliminated by including an instruction in the charge that the state has the ultimate burden of proving every element of the offense beyond a reasonable doubt.  When such a standard instruction is coupled with one placing a burden on the defendant to prove his defense by a preponderance of the evidence, the predictable result is more than merely confusion.  In order to attribute some significance to the defendants' burden, a rational juror's only option is to conclude that the defendants' evidence concerning the subject matter of the "affirmative defense" is to be considered only if the jury finds it persuasive, i.e., finds that the facts sought to be proved are more likely true than not true.  It is clear from Martin that this is constitutionally impermissible.

Id. at 440-41.

As to the instruction the military judge provided on how the panel should treat the evidence of the affirmative defense, we note that military judge instructed the panel that they "may" consider the evidence "if they found it relevant."  This permissive instruction is inconsistent with both Martin and Neal, which held that where there is an overlap between the evidence pertinent to an affirmative defense and evidence negating the prosecution's case, there is no due process violation when instructions:  "convey to the jury that all of the evidence, including the evidence going to [the affirmative defense], must be considered in deciding whether there was a reasonable doubt about the sufficiency of the State's proof of the elements of the crime."  Neal, 68 M.J. at 299 (brackets in original) (quoting Martin, 480 U.S. at 234) (emphasis supplied).

16

The unconstitutional burden shift to Prather under this statutory scheme was not cured by the military judge's instructions.

B.  The second burden shift in Article 120(t)(16), which shifts the burden to the government to disprove an affirmative defense beyond a reasonable doubt

Article 120(t)(16), UCMJ, initially assigns the burden of proof for any affirmative defense to the accused.  It then provides that "[a]fter the defense meets this burden, the prosecution shall have the burden of proving beyond a reasonable doubt that the affirmative defense did not exist."  As we have found that the initial burden shift in Article 120(t)(16), UCMJ, to be unconstitutional under the circumstances presented in this case, the issue involving the second burden shift becomes moot.  Even if this were not the case, however, we agree with Prather that the second burden shift is a legal impossibility.[10]  The problem with the provision is structural.  If the trier of fact has found that the defense has proven an affirmative defense by a preponderance of the evidence, it is legally impossible for the prosecution to then disprove the affirmative defense beyond

---

[10] We note that United States v. Medina, a pending case arising from the United States Navy-Marine Corps Court of Criminal Appeals, was argued the same day as this case and presented the same issue as to the validity of the second burden shift in Article 120(t)(16), UCMJ.  The government in Medina, in consultation with the Department of Defense Office of General Counsel, took the position that the second burden shift was a logical impossibility and therefore a legal nullity.  Motion to

United States v. Prather, No. 10-0345/AF

a reasonable doubt and there must be a finding of not guilty.
There are simply no instructions that could guide members
through this quagmire, save an instruction that disregards the
provision.

CONCLUSION

The decision of the United States Air Force Court of
Criminal Appeals is reversed as to Charge I and its
specification.  The finding as to that offense is set aside; the
finding as to Charge II and its specification is affirmed; the
sentence is set aside.  The record of trial is returned to the
Judge Advocate General of the Air Force who may order a
rehearing.  Alternatively, a sentence rehearing may be ordered
with regard to the affirmed finding.

---

Clarify, United States v. Medina, No. 10-0262 (C.A.A.F. Sept.
29, 2010).

Appendix

United States v. Prather, No. 10-0345
Record Extract of Instructions

In the specification of Charge I, the accused is charged with the offense of aggravated sexual assault.  To find the accused guilty of this offense, you must be convinced by legal and competent evidence beyond a reasonable doubt of the following elements, and there are two elements:

First, that on or about 30 October 2007, at or near Travis Air Force Base, California, the accused engaged in a sexual act, to wit: sexual intercourse, with [SH]; and,

Two, that the accused did so when [SH] was substantially incapacitated.

I am going to define a couple of terms for you.  First, "sexual act."  Sexual act means the penetration, however slight, of the vulva by the penis.

Second, "substantially incapacitated."  Substantially incapacitated means that level of mental or physical impairment due to alcohol, drugs, or otherwise, that rendered the alleged victim unable to appraise the nature of the sexual conduct at issue, unable to decline participation in the sexual conduct at issue, unable to physically communicate unwillingness to participate in the sexual conduct at issue, or otherwise unable to make or communicate competent decisions.

The evidence has raised the issue of whether [SH] consented to the sexual act concerning the offense of aggravated sexual assault, as alleged in the specification of Charge I.  Consent is an affirmative defense to that charged offense.  "Consent" means words or overt acts indicating a freely given agreement to the sexual conduct by a competent person.  An expression of lack of consent through words or conduct means there is no consent.  Lack of verbal or physical resistance or submission resulting from the accused's use of force, threat of force, or placing another person in fear does not constitute consent.

A person cannot consent to sexual activity if that person is substantially incapacitated.  As previously indicated, consent is an affirmative defense to the charge of aggravated sexual assault.  However, in order for consent as an affirmative defense to be an issue in your deliberations, the defense must

prove by a preponderance of the evidence that [SH] consented to the sexual act alleged.  Proof by a preponderance of the evidence is proof that a fact is more likely true than not true.

If you find that the defense has met this burden, then the prosecution has to prove beyond a reasonable doubt that consent did not exist.  Therefore, if you find that the defense has proven consent by a preponderance of the evidence, then in order to find the accused guilty of the offense of aggravated sexual assault, as alleged in the specification of Charge I, you must be convinced beyond a reasonable doubt that, at the time of the sexual act alleged, [SH] did not consent.

If the defense did not prove by a preponderance of the evidence that [SH] consented to the sexual act alleged, then the government bears no burden to disprove the affirmative defense of consent, and consent as an affirmative defense is not an issue for your further consideration in your deliberations.  You may, however, still consider any evidence presented on the issue of consent if you find such evidence is relevant to your consideration of whether the prosecution has proven the elements of the offense beyond a reasonable doubt.

In addition, the evidence has raised the issue of whether the accused mistakenly believed that [SH] consented to the sexual act concerning the offense of aggravated sexual assault, as alleged in the specification of Charge I.  Mistake of fact as to consent is an affirmative defense to that charged offense.  Mistake of fact as to consent means the accused held, as a result of ignorance or mistake, an incorrect belief that the other person engaging in the sexual conduct consented.  The ignorance or mistake must have existed in the mind of the accused and must have been reasonable under all the circumstances.  To be reasonable, the ignorance or mistake must have been based on information, or lack of it, which would indicate to a reasonable person that the other person consented.

Additionally, the ignorance or mistake cannot be based on the negligent failure to discover the true facts.  Negligence is the absence of due care.  Due care is what a reasonably careful person would do under the same or similar circumstances.  You should consider the accused's age and experience, along with the other evidence on this issue.

As previously indicated, mistake of fact as to consent is an affirmative defense to the charge of aggravated sexual assault.  However, in order for mistake of fact as to consent as an affirmative defense to be an issue in your deliberations, the

defense must prove by a preponderance of the evidence that the accused mistakenly believed that [SH] consented to the sexual act alleged. Proof by a preponderance of the evidence is proof that a fact is more likely true than not true. If you find that the defense has met this burden, then the prosecution has the burden to prove beyond a reasonable doubt that mistake of fact as to consent did not exist. Therefore, if you find that the defense has proven mistake of fact as to consent by a preponderance of the evidence, then in order to find the accused guilty of the offense of aggravated sexual assault, as alleged in the specification of Charge I, you must be convinced beyond a reasonable doubt that, at the time of the sexual act alleged, the accused's mistake was unreasonable.

If the defense did not prove by a preponderance of the evidence that the accused was mistaken as to whether [SH] had consented to the sexual act, then the government bears no burden to disprove the affirmative defense of mistake of fact as to consent, and mistake of fact as to consent as an affirmative defense is not an issue for your further consideration.

There has been some evidence concerning the accused's state of intoxication at the time of the alleged offense. On the question of whether the accused's belief was reasonable, you may not consider the accused's intoxication, if any, because a reasonable belief is one that an ordinary prudent sober adult would have under the circumstances of this case. Voluntary intoxication does not permit what would be an unreasonable belief in the mind of a sober person to be considered reasonable because the person is intoxicated. You may, however, still consider any evidence presented on the issue of mistake of fact as to consent if you find such evidence is relevant to your consideration of whether the prosecution has proven the elements of the offense beyond a reasonable doubt.

Those are the instructions for the specification of Charge I.

United States v. Prather, No. 10-0345/AF

    BAKER, Judge, with whom STUCKY, Judge, joins (dissenting as to Part A and concurring in the result):

### Introduction

    This case raises two constitutional questions regarding the affirmative defense of consent in the context of aggravated sexual assault under Article 120(c)(2), Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 920 (2006).  First, in light of a statutory scheme where an element of the government's case is "[t]hat the other person was substantially incapacitated," and the affirmative defense is defined in a way that requires the accused to prove capacity to consent:  does the statutory requirement that the accused prove the affirmative defense by a preponderance of the evidence unconstitutionally shift the burden of proof to the accused to disprove an essential element of the Government's case?

    The majority concludes that:

    If an accused proves that the victim consented, he has necessarily proven that the victim had the capacity to consent, which logically results in the accused having disproven an element of the offense of aggravated assault . . . an affirmative defense may not shift the burden of disproving any element of the offense to the defense.  Thus, the interplay of [the] sections . . . results in an unconstitutional burden shift to the accused.

United States v. Prather, __ M.J. __ (12-13) (C.A.A.F. 2011) (citations omitted).  The problem with this analysis is that

there is a difference between negating an element and shifting the burden of proof to the accused. If the government retains the burden to prove each element of the offense, <u>regardless of whether the accused demonstrates an affirmative defense</u>, then the burden of proof does not in fact shift to the accused as the majority contends. By definition, an affirmative defense negates one's culpability.

The constitutional problem arises when the law not only establishes a defense requiring an accused to disprove an element of the offense, but then also relieves the government of its duty to independently prove that element if the defense falls short. That is not what happened in this case. Article 120(t)(14), UCMJ, does not relieve the Government of proving each element of the offense, and the military judge in this case specifically instructed the members that the burden remained with the Government regardless of what Appellant demonstrated or failed to demonstrate.

Therefore, because I read the relevant Supreme Court precedents differently than the majority, I respectfully dissent from its conclusion that this statutory scheme has resulted in an unconstitutional burden shift to the accused to disprove an element of the Government's case notwithstanding the fact that the members were properly and adequately instructed to the contrary.

In addition to reaching what I believe is the wrong conclusion regarding the affirmative defense, the majority has taken an erroneous path to that conclusion. First, the majority does not indicate why United States v. Neal, 68 M.J. 289 (C.A.A.F. 2010), does not fit within the analysis now presented in this case. In Neal, just as in this case, the defense at issue negated an element of the offense.

More importantly, the majority determines that the military judge's instructions were insufficient to resolve the constitutional issue presented. However, the majority does not indicate what instructions would have cured the asserted problem. Indeed, the majority "does not believe that any instruction could have cured the error where the members already had been instructed in a manner consistent with the text of Article 120." But neither does the majority indicate that the affirmative defense is unconstitutional on its face or that the statutory language establishing the offense is unconstitutional on its face. Thus, practitioners are without guidance as to how to apply Article 120(c)(2), UCMJ, and the affirmative defense contained in Article 120(t)(16), UCMJ, in the future. That leaves the accused and the government past, present, and future in legal limbo.

The second question in this case asks whether Article 120(t)(16), UCMJ, violates a military accused's due process

right by shifting the burden back to the government to disprove the defense of consent beyond a reasonable doubt after the defense has proven the affirmative defense by a preponderance of the evidence. Restated, if a preponderance of the evidence necessarily raises a reasonable doubt, as a matter of due process can the government logically prove its case beyond a reasonable doubt once the affirmative defense is proved? Here, I agree with the majority that the burden shifting creates a legal impossibility. However, there is another word for what the statute does here and that is "unconstitutional." On this question of law, the Court should not shy away from stating so.

In summary, for the reasons stated below, I conclude that the statutory language contained in Article 120(t)(16), UCMJ, assigning to the accused the burden of proving the affirmative defense is not unconstitutional on its face, and when properly instructed upon, can be applied in a constitutional manner. However, with respect to the second burden shift contained in Article 120(t)(16), UCMJ, purporting to shift the burden back to the government once the affirmative defenses at issue are proved by a preponderance, I conclude that provision is unconstitutional on its face.

4

Discussion

A.  Articles 120(c)(2), (t)(14), and (t)(16), UCMJ:  The First
Burden Shift Requiring the Accused to Prove the Affirmative
Defense of Consent

Before this Court, Appellant raises facial and as applied constitutional challenges to the offense of aggravated sexual assault under Article 120(c)(2), UCMJ.  In particular, Appellant challenges application of the affirmative defense of consent in the context of this offense.

According to Appellant and the majority, an accused cannot prove the affirmative defense by a preponderance of the evidence without also disproving the second element of the offense of aggravated sexual assault.  Leland v. Oregon, 343 U.S. 790 (1952), among other cases, stands for the proposition that placing the burden on an accused to prove an affirmative defense is not, in and of itself, unconstitutional.  Id. at 799 ("We are therefore reluctant to interfere with [the State's] determination of its policy with respect to the burden of proof on the issue of sanity since we cannot say that policy violates generally accepted concepts of basic standards of justice.").

While we are asked to interpret a provision of the UCMJ, the constitutional question of law, hinges on interpretation of a handful of Supreme Court cases addressing affirmative defenses as well as the burden of proof.  Over the years, the Supreme Court has wrestled with this issue.  Dixon v. United States, 548

5

U.S. 1 (2006); Martin v. Ohio, 480 U.S. 228 (1987); Patterson v. New York, 432 U.S. 197 (1977); Mullaney v. Wilbur, 421 U.S. 684 (1975); Leland, 343 U.S. 790.  As the division on this Court in Neal suggests, the case law distinguishing between that which offends due process and that which does not is opaque.  In Patterson, 432 U.S. at 207, where the Supreme Court found no unconstitutional shifting of the burden to the defendant, the Court concluded that the statutory affirmative defense at issue "does not serve to negative any facts of the crime which the State is to prove in order to convict of murder."  In Martin, the Court considered a state law providing an affirmative defense of self-defense to murder, which the defendant was required to prove.  480 U.S. at 230.  The Court concluded that "evidence offered to support the defense may negate a purposeful killing by prior calculation and design, but [the State] does not shift to the defendant the burden of disproving any element of the state's case."  Id. at 234.  In reaching this conclusion, the Court also noted that the instructions "are adequate to convey to the jury that all of the evidence, including the evidence going to self-defense, must be considered in deciding whether there was a reasonable doubt about the sufficiency of the State's proof of the elements of the crime."  Id.

It is also settled that a statute may "not shift to the defendant the burden of disproving any element of the

6

[prosecution's] case." Id. In Mullaney, for example, the Court concluded that the state murder statute at issue required the defendant "to carry the burden of proving a fact so critical to criminal culpability" as to create an unconstitutional burden shift to the defendant. 421 U.S. at 702. In particular, the state statute there defined murder as the unlawful killing of a human being "with malice aforethought, either express or implied." Id. at 686. Malice, the Court concluded, was an element of the offense without which a charge of murder would be reduced to manslaughter. Id. Based on the statutory language, state law at the time required that the jury be instructed that if the prosecution established that the homicide was both intentional and unlawful, "malice aforethought was to be conclusively implied unless the defendant proved by a fair preponderance of the evidence that he acted in the heat of passion on sudden provocation." Id. (emphasis added). The problem, the Court concluded, was that the statutory language allowed a presumption on an element of the crime of murder under the statute, i.e., malice aforethought. Thus, the statute both relieved the prosecution of any duty to produce any evidence on this element, and at the same time, imposed the burden on the accused to disprove it by a fair preponderance since sudden provocation was the converse of malice aforethought. Id. at 687. That is a burden shift. As the Court in Patterson later

7

summarized the holding in Mullaney: "[A] State must prove every ingredient of an offense beyond a reasonable doubt, and . . . it may not shift the burden of proof to the defendant by presuming that ingredient upon proof of the other elements of the offense." 432 U.S. at 215 (emphasis added).

As I read these cases several principles are evident. First, the burden to prove the elements of an offense must always remain with the prosecution. Second, a statute may not presume that an element of the offense is met in the absence of the accused disproving that element by carrying his burden on an affirmative defense. Finally:

> [a]n overlap between the evidence pertinent to the affirmative defense and evidence negating the prosecution's case does not violate the Due Process Clause when instructions "convey to the jury that all of the evidence, including the evidence going to [the affirmative defense], must be considered in deciding whether there was a reasonable doubt about the sufficiency of the State's proof of the elements of the crime."

Neal, 68 M.J. at 299. This last principle applies whether or not the defense carries its burden to prove the defense or merely provides some evidence warranting instruction on the defense. It is this last principle that is most evident in the case before us and which is not distinguished by the majority in a meaningful manner since the analysis presented would apply to both this case and Neal.

The offense at issue here, aggravated sexual assault under Article 120(c)(2), UCMJ, does not expressly include lack of consent as an element. In fact, Congress expressly excluded consent as an issue (or element) of the government's case. "Consent and mistake of fact as to consent are not an issue or an affirmative defense in a prosecution under any other subsection, except they are an affirmative defense for the sexual conduct in issue . . . under . . . subsection (c) (aggravated sexual assault) . . . ." Article 120(r), UCMJ. Although Article 120(t)(16), UCMJ, describes an affirmative defense as one in which the accused need not deny commission of "the objective acts, constituting the offense charged," it does not require him to admit criminal responsibility for those acts, which could create a presumption of guilt similar to the situation encountered in Mullaney. That is to say, although Appellant was free to admit the act of sexual conduct, and did so, he was not required to admit that the victim was "substantially incapacitated." Further, Articles 120(c)(2), t(14), and t(16), UCMJ, do not indicate expressly or otherwise that evidence of consent cannot be considered on the government's ultimate burden to prove guilt beyond a reasonable doubt. For these reasons, the statutory scheme at issue here does not, on its face, create any presumption that burdens the accused with disproving an element of Article 120(c)(2), UCMJ.

In Neal, evidence of the element of force and the defense of consent overlapped but ultimately addressed distinct facts and conduct.[1] In contrast, the element of substantial incapacity and the definition of consent arguably present two sides of the same coin. On the facts of this case, Appellant could not prove consent without also proving a capacity to consent on the part of the victim. After all, Article 120(t)(14), UCMJ, states, "A person cannot consent to sexual activity if . . . substantially incapable of . . . appraising the nature of the sexual conduct at issue due to . . . mental impairment or unconsciousness resulting from consumption of alcohol. . . ."[2]

The constitutional risks, then, are twofold. First, the members might assume that if the accused tries, but fails, to offer some evidence of consent or fails to establish the

---

[1] In Neal, we distinguished between (1) a fact on which the defense bears the burden of persuasion (consent) and (2) a matter that is subsidiary to a fact on which the prosecution bears the burden of persuasion (force). 68 M.J. at 299. It would seem that a military judge, aware of this distinction, could craft an instruction obviating the concern by informing the members that evidence of consent may be relevant to their determination of whether the prosecution has proven the required elements of the offense beyond a reasonable doubt. Id. Such an instruction was given in this case.

[2] In a sense, the situation is not that different than what one encounters with respect to the issue of sanity and the affirmative defense of lack of mental responsibility. It might be argued in a given case that insanity and intent are also two sides of the same coin. However, it is clear that the affirmative defense at issue there does not result in an impermissible shift to the accused that relieves the government of its burden to prove the element of intent.

affirmative defense by a preponderance of the evidence, the government will have necessarily met its burden of persuasion on the element beyond a reasonable doubt. Second, and related, the members may treat the accused's evidence of consent as bearing only on the question of the affirmative defense and not also as evidence that may independently bear on whether the government has met its ultimate burden beyond a reasonable doubt. However, the statutory text itself does not compel either of these results. The scheme does raise the risk that the members will do so absent instructions that carefully guide them past the three principles identified above.

The majority points to the fact that the military judge instructed the members that they "may" consider the evidence of the affirmative defense, as opposed to "must," if they found it relevant "to [their] consideration" as to whether the Government had proven the elements of the offense beyond a reasonable doubt. To the extent this language in the instruction can be read to imply that such consideration is optional, then it would fall short of Martin's direction that the instructions "convey to the jury that all of the evidence, including the evidence going to [the affirmative defense], must be considered in deciding whether there was a reasonable doubt about the sufficiency of the [prosecution's] proof of the elements of the crime." Martin, 480 U.S. at 232-36. On the other hand, to the

11

extent it is read to imply that the members must consider all the evidence presented, but may assign to it whatever weight they deem appropriate, then it is constitutionally sound. A clearer instruction on this point might have advised the members to simply consider all the evidence presented in determining whether the prosecution has proven the elements of the offense beyond a reasonable doubt. Additionally, the members could be instructed that they may determine what weight, if any, to assign to the evidence.

In this case, with respect to Appellant's burden to prove the affirmative defense of consent, the military judge instructed the members consistent with the statute. As a result, the constitutional principles embedded in the Mullaney line of cases were implicated. Here, the military judge's instructions addressed these concerns. As the majority correctly points out, during the preliminary instructions, the military judge advised the members that "The Government has the burden of proving the accused's guilt by legal and competent evidence beyond a reasonable doubt." He also reminded them that this burden never shifts to the accused. It, therefore, remains unclear why these "standard ultimate burden instructions" were inadequate, unless the provisions are unconstitutional on their face. As in Neal, whether or not the statutory provisions at issue are unconstitutional as applied in a given case will

12

depend on the instructions given, or perhaps more to the point, not given.

B.  Article 120(t)(16), UCMJ:  The Second Burden Shift Back to the Government to Disprove the Affirmative Defense

Article 120(t)(16), UCMJ, assigns the burden of proof for the affirmative defense to the accused.  It then states, "After the defense meets this burden, the prosecution shall have the burden of proving beyond a reasonable doubt that the affirmative defense did not exist."  I agree with the majority's characterization of this second burden shift as a legal impossibility.  That said, I conclude that it presents a due process violation and is thus, unconstitutional on its face.

The problem is in the structure of the statute.  If the defense meets its burden of proof, that it is more likely than not that the victim has consented, then it necessarily rebuts the prosecution's effort to meet its burden, thereby excusing the accused from criminal liability.  By definition, the government will not have persuaded the members of the accused's guilt beyond a reasonable doubt, at which point they should reach a finding of not guilty.  At this point, the relationship between the definition of consent and the element of substantial incapacity could work in the appellant's constitutional favor.

However this second burden shift back to the government, in effect, serves as an unauthorized reconsideration of a finding

13

of not guilty.[3]  Alternatively, it raises the prospect that the

members will convict an accused on the basis of something less

than evidence beyond a reasonable doubt.  In either case the

effect is constitutionally flawed.  The point is illustrated by

comparison to the procedure set forth in R.C.M. 921(c)(4)

regarding the affirmative defense of lack of mental

responsibility:

> When the defense of lack of mental responsibility is
> in issue . . . , the members shall first vote on
> whether the prosecution has proven the elements of the
> offense beyond a reasonable doubt.  If at least two-
> thirds of the members present . . . vote for a finding
> of guilty, then the members shall vote on whether the
> accused has proven lack of mental responsibility.  If
> a majority of members present concur that the accused
> has proven lack of mental responsibility by clear and
> convincing evidence, a finding of not guilty only by
> reason of lack of mental responsibility results.

Emphasis added.  In contrast, Article 120(t)(16), UCMJ, of

Article 120, UCMJ, contains no such language; nor does it compel

instructions to the members on how to deal with the competing

burdens of persuasion.  Moreover, Article 120(t)(16), UCMJ,

includes a second shift to the prosecution allowing it to

disprove the defense whereas R.C.M. 921 does not.  Neither

Article 120(t)(16), UCMJ, nor the MCM (2008 ed.), provide any

---

[3] The Manual for Courts-Martial (MCM), of course, has a process
for reconsideration of members' findings of not guilty while the
members are still in deliberations.  Rule for Courts-Martial
(R.C.M.) 924 states, "Any finding of not guilty shall be
reconsidered if a majority [of the members] vote for
reconsideration."

guidance as to how the members could navigate between these competing burdens of persuasion. I have serious doubt that the members here could have understood and addressed the shifting burdens of persuasion without further clarifying instructions consistent with the constitutional principles highlighted above. Thus, this section is unenforceable, and if literally followed, is unconstitutional.[4]

## Conclusion

Court-martial members may not presume that the Government has met an element of the offense on account of an accused's failure to prove a defense. All evidence, including evidence addressed to an affirmative defense, must be considered in deciding whether the government has met its burden of proving each element of the offense beyond a reasonable doubt, whether or not the accused is successful in proving his defense. Finally, and related, the prosecution alone bears the burden to prove each element of the offense beyond a reasonable doubt, and that burden may never move to the accused.

Thus, for the reasons stated I dissent from the conclusion reached in Part A of the Court's opinion. However, since I

---

[4] However, I would also not recommend adopting the approach taken in the current version of the Military Judges' Benchbook that places the burden on the Government to disprove the affirmative defense if some evidence raises the defense. Dep't of the Army, Pam. 27-9, Legal Services, Military Judges' Benchbook ch. 3, para. 3-45-5, Note 9 (2010). Such an approach, although helpful, clearly contravenes the statute.

would reverse because of the due process problem identified above, I concur in the result reached.